UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MILNOT HOLDING CORPORATION,

                              Plaintiff,                       DECISION AND ORDER

-vs-

                                                    08-CV-6140 CJS

THRUWAY PRODUCE, INC.,

                              Defendant.

_____

THRUWAY PRODUCE, INC.,

                              Third-Party Plaintiff,

-vs-

R.M. ZINGLER FARMS, LYNOAKEN FARMS, INC.,
K.M. DAVIES CO., INC., ORCHARD DALE FRUIT
FARM, INC. and C.W. COLD STORAGE, INC.,

                              Third-Party Defendants.

_____

INTRODUCTION

      This began as a diversity action for breach of a contract between a baby food manufacturer, Milnot Holding Corporation ("Milnot"), and its apple supplier, Thruway Produce, Inc. ("Thruway"), in which Milnot maintained that Thruway supplied apples that were contaminated with rat poison. In response to that claim, Thruway asserted third-party claims against its apple suppliers – R.M. Zingler Farms ("Zingler"), Lynoaken Farms, Inc. ("Lynoaken"), K.M. Davies Co., Inc. ("Davies") and Orchard Dale Fruit Farm, Inc. ("Orchard Dale"), and a cold-storage operator, C.W. Cold Storage, Inc. ("C.W."). The third-party defendants, in turn, asserted cross-claims against each other. Now before the Court is Davies' motion for summary judgment (Docket No. [#135]), and Thruway's cross-motion [#156] for leave to file an amended complaint. Davies' motion is granted, and Thruway's cross-motion is denied.

BACKGROUND

This is the fourth summary judgment Decision and Order that this Court has issued in this action, and the reader is presumed to be familiar with the prior rulings, particularly the Decision and Order granting summary judgment for C.W., docket no. [#179], since most of the same issues are presented here.

Unless otherwise noted, the following are the undisputed facts of this case. At all relevant times, Milnot owned Beech-Nut Nutrition Corporation ("Beech-Nut"), which operated a food processing plant in Canajoharie, New York. The Beech-Nut plant produced "an assortment of baby and toddler food products." Complaint [#1] at ¶ 8. In 2005, Milnot and Thruway entered into a contract whereby Thruway agreed to be the exclusive supplier of apples to Beech-Nut, "for the 2005/2006 season." *Id*. at ¶ 9. The contract required Thruway to supply apples that were free of the rodenticides Brodifacoum and Bromadiolone, which are commonly found in baits used to kill rats and mice.

Thruway did not grow the apples that it supplied to Beech-Nut. Instead, Thruway purchased the apples from various growers, and stored them at various facilities, including a storage operated by Davies, until they were needed by Beech-Nut. At the relevant time, the storage contract between Thruway and Davies was oral, not written. The oral agreement did not include any provision requiring Davies to indemnify Thruway.

On four occasions in 2006, Beech-Nut found rodent bait containing Brodifacoum and/or Bromadiolone mixed in with apples that had been supplied by Thruway. However, the only incidents that possibly implicate Davies occurred on January 23, 2006 and January 27, 2006, when rat-bait pellets were discovered on the production line while apples were being processed that had previously been stored by Davies. There is no evidence that Davies used rat bait similar to what was found on those dates, and no

evidence otherwise indicating that Davies caused the rat bait to be mixed in with the apples.

As mentioned earlier, Milnot commenced this action against Thruway, asserting claims, under New York State law, for breach of contract and breach of warranties. Milnot also asserted claims for negligence and strict products liability.[1]

Thruway, in turn, asserted third-party claims against Davies and the other third-party defendants, on the general premise that Thruway was merely a "middle man," and that the contamination was the fault of the third-party defendant apple growers and/or storage operators. Specifically, Thruway asserted third-party claims for contribution, common-law indemnification and contractual indemnification. Thruway did not assert claims for breach of contract.

Subsequently, in the first-party action, Milnot moved for partial summary judgment, as to liability, against Thruway, on the contract and warranty claims, but not the negligence or strict products liability claims. By separate Decision and Order [#177], the Court granted Milnot's motion for partial summary judgment.

Davies now moves for summary judgment on all third-party claims. Davies maintains, first, that there is no triable issue of fact as to whether it is responsible for the rat-bait pellets that were discovered at Beech-Nut's facility on January 23, 2006 and January 27, 2006. The Court agrees. In that regard, although there may be an issue as to the source of the rat-poison pellets, there is no evidence from which a jury could

---

[1] Milnot's negligence claim asserts that Thruway "had a duty to exercise reasonable care in introducing, supplying, selling and/or distributing apples to Beech-Nut," which Thruway breached, and that such duty was "independent of any duty under the sales contract." Complaint [#1] at ¶ ¶ 59-60. Milnot's strict products liability claim asserts that the apples supplied by Thruway were "unreasonably dangerous in that they contained pesticides in excess of federal tolerances." Complaint [#1] at ¶ 66.

reasonably conclude that Davies was the source. As discussed further below, mere speculation is not sufficient to create a triable issue of fact.

However, even assuming that there was an issue of fact as to whether Davies was responsible for the rat poison, Davies further maintains that, as a matter of law, it cannot be found liable to Thruway under the contribution and indemnification theories alleged in Thruway's Third-Party Complaint. Davies essentially maintains that since Milnot's claims against Thruway are contractual in nature, Milnot cannot recover against Thruway on the negligence and strict products liability causes of action. Consequently, Davies argues, Thruway cannot prevail against Davies on its common-law contribution/indemnification claims, since such relief is not available in connection with contract claims. Davies also maintains that Thruway cannot succeed on its contractual indemnification claim, since Davies and Thruway had, at most, an oral contract which did not require Davies to indemnify Thruway.

Thruway disputes Davies' contentions, but alternatively requests leave to amend the third-party complaint to assert additional causes of action for breach of contract and breach of warranties.

DISCUSSION

*Thruway's Motion to Amend*

At the outset, as the Court already indicated during oral argument, Thruway's alternative motion to amend is denied, as untimely brought. On this point, the relevant law is that although "a court should freely give leave to amend where justice so requires, Fed.R.Civ.P. 15(a)(2), this must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Velez v. Burge*, 483 Fed.Appx. 626, 628, 2012 WL 1889402 at *1 (2d Cir.2012) (citations

4

and internal quotation marks omitted).  In the instant case, on January 20, 2009, the Honorable Marian W. Payson, United States Magistrate Judge, issued an Amended Scheduling Order [#62], which directed, *inter alia*, that "[a]ll motions to join other parties and to amend the pleadings shall be filed on or before March 20, 2009."  Thruway did not file its motion to amend by that deadline, but instead, filed its motion to amend [#136] on November 1, 2011.  In response to the Court's questioning at oral argument, Thruway's counsel indicated that there was good cause to extend Magistrate Judge Payson's deadline, because discovery took place after her deadline, with the final deposition having been completed in November 2010.  Thruway's counsel admitted, though, that after completing discovery, he never sought an extension of the deadline for filing amended pleadings.  As a result, the motion to amend was filed more than two years after the deadline, and a year after discovery was completed.  On these facts, the Court finds that Thruway has not shown good cause for extending the deadline, and the motion to amend is denied.

 *Rule 56*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

A party cannot demonstrate a triable issue of fact based on mere speculation or conjecture. *See, e.g., U.S. v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) ("[I]n order to defeat a motion for summary judgment, the opposing party must set forth *specific facts* showing that there is a genuine issue for trial. Such an issue is not created by a mere allegation in the pleadings, nor by surmise or conjecture on the part of the litigants.") (emphasis added; citations and internal quotation marks omitted); *see also, D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some *hard evidence* showing that its version of the events is not wholly fanciful.") (emphasis added); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) ("In determining whether a genuine issue of material fact exists for trial, we are obliged carefully to distinguish between evidence that allows for a reasonable inference . . . and evidence that gives rise to mere speculation and conjecture.") (citation and internal quotation marks omitted).

The parties agree that New York State Law substantive law applies to the subject claims.

### Milnot's Tort Claims Against Thruway

Davies maintains that Thruway cannot be liable to Milnot for negligence or strict products liability, and that Thruway therefore cannot seek common law contribution or indemnification from Davies. Davies' argument in this regard is based on the assumption that Milnot is prevented from seeking recovery against Thruway in tort, because its claims are more properly classified as contractual in nature. In the Court's prior Decision and Order granting summary judgment for C.W. [#179], it found, as a matter of law, that Milnot cannot succeed on its tort claims against Thruway. Consequently, any third-party liability

that Davies might face would be based on Thruway having been found to have breached its contractual obligations to Milnot.

### *Thruway's Claims for Contribution and Common-Law Indemnification*

The Court also found, in its Decision and Order granting summary judgment for C.W., that since Thruway's liability to Milnot is contractual, Thruway cannot prevail on its third-party claims for contribution and common-law indemnification. At the outset, Thruway cannot maintain an action for contribution, because "[u]nder New York law there is no right of contribution between parties whose potential liability to a third party is for economic loss resulting only from breach of contract." *In re Crazy Eddie Securities Litig.*, 802 F.Supp. 804, 815 (E.D.N.Y. 1992); *see also, Board of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28, 517 N.E.2d 1360, 1364 (1987) ("[T]he existence of some form of tort liability is a prerequisite to application of [New York Civil Practice Law and Rules ("C.P.L.R.") § 1401]. We find nothing in the legislative history or the common-law evolution of the statute on which to base a conclusion that CPLR 1401 was intended to apply in respect to a pure breach of contract action such as would permit contribution between two contracting parties whose only potential liability to the plaintiff is for the contractual benefit of the bargain.").[2]  Therefore, Davies is entitled to summmary judgment on the contribution claim.

Thruway also cannot maintain an action for common-law indemnification against Davies, since in New York, a party cannot obtain common-law indemnification to recover

---

[2] Even assuming that Thruway was facing liability in tort, its claim for contribution would be an improper vehicle here, since it is claiming that it had no part in the alleged wrongdoing, and that its liability is due strictly to Davies' wrongdoing. Since Thruway is not seeking to apportion liability between itself and Davies based on their respective tortious wrongdoing, a claim for contribution does not lie. See, *D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 462, 435 N.E.2d 366, 369 (1982) ("[W]here one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent.").

damages resulting from its own breach of contract. On this point, in *Knight v. H.E. Yerkes and Assocs., Inc.*, 675 F.Supp. 139, 143 (S.D.N.Y. 1987), the court stated:

> Under New York law . . . indemnity may be implied "to allow one who was compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party." *Hanley v. Fox*, 97 A.D.2d 606, 607, 468 N.Y.S.2d 193, 194 (3d Dept.1983) (*citing D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 460–61, 435 N.E.2d 366, 368–69, 450 N.Y.S.2d 149, 151–52). In a case of implied indemnity, however, "where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied." *Hanley v. Fox*, 97 A.D.2d at 607, 468 N.Y.S.2d at 194. Because the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that Yerkes was not at least partially responsible for harm, for it was Yerkes that allegedly breached the contract, not O'Leary. There can therefore be no cause of action in indemnity.

(footnote omitted); *see also*, *Facilities Development Corporation v. Miletta*, 180 A.D.2d 97, 104, 584 N.Y.S.2d 491, 496 (3d Dept. 1992) (Denying claim for implied indemnification, stating: "If, in fact, Detroit breached its obligations under its contract with Mechanical and thereby caused all or a portion of the economic loss sustained by plaintiff, Miletta cannot be held liable for the same loss because the proximate cause of that loss would be Detroit's breach of contract, not anything Miletta did or did not do."); *Commonwealth Insurance Co. v. Thomas A. Greene & Company, Inc.*, 709 F.Supp. 86, 89 (S.D.N.Y. 1989) ("Greene is not entitled to common law indemnification from North River or Crum & Forster because it is being sued for its own negligence, breach of contract, breach of warranty and breach of fiduciary duties, not for actions of North River or Crum & Forster."); *Richards Plumbing & Heating Co., Inc. v. Washington Group International, Inc.*, 59 A.D.3d 311, 312, 874 N.Y.S.2d 410, 411 (1st Dept. 2009) ("The court properly dismissed the construction manager's third-party claim for common-law indemnification since plaintiff's claims and the owner's cross claims allege breach of contract by the construction manager, not vicarious

liability attributed solely to the fault of the architect."); *Edgewater Construction Co., Inc. v. 81 & 3 of Watertown, Inc.*, 252 A.D.2d 951, 952, 675 N.Y.S.2d 722, 724 (4th Dept. 1998) ("Because Edgewater is suing 81 & 3 for its breach of the construction contract and is not seeking to hold 81 & 3 vicariously liable for any negligence by Wal-Mart, 81 & 3 has not cause of action against Wal-Mart for common-law or implied indemnification.") (collecting cases).

As the foregoing cases indicate, if Milnot were seeking to hold Thruway vicariously liable for Davies' actions, then Thruway could maintain a claim against Davies for common-law indemnification. However, since Milnot is suing Thruway for Thruway's own breach of contract, Thruway cannot maintain a common-law indemnification claim against Davies. Therefore, Davies is entitled to summary judgment on the common-law indemnification claim.

### *Thruway's Claim for Contractual Indemnification*

It is undisputed that the only contract between Thruway and Davies is an oral contract that did not address indemnification. Consequently, there is no express agreement regarding indemnification. Thruway nevertheless maintains that "implied contractual indemnification" applies, because "the nature of the relationship between Thruway and Davies transcends the normal ordinary business relationship."[3]

However, the Court disagrees, since the indemnification to which Thruway refers is a type of implied indemnification which, as already discussed, does not apply where, as here, Thruway's liability arises from its own breach of contract. Thruway's reference to cases such as *Mas v. Two Bridges Associates by Nat. Kinney Corp.*, 75 N.Y.2d 680, 554 N.E.2d 1257 (1990), also misses the mark, since those cases involve situations where the

---

[3]Thruway Memo of Law [#150] at pp. 7-8.

proposed indemnitee is vicariously liable for another's tort, which is not the case here. Consequently, Davies is entitled to summary judgment on Thruway's claim for contractual indemnification.

## CONCLUSION

Davies' motion for summary judgment (Docket No. [#135]) is granted, and Thruway's cross-motion [#156] for leave to file an amended complaint, is denied as against Davies.  The Clerk of the Court is directed to terminate Davies as a party to this action.

SO ORDERED.

Dated:     March 11, 2014
           Rochester, New York

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge